IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAMERA SHANNON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:20-cv-307-S |
| | § | |
| BAYSIDE CAPITAL SERVICES, LLC, | § | |
| | § | |
| Defendant. | § | |

**AMENDED FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Tamera Shannon has filed a motion for default judgment against Defendant Bayside Capital Services, LLC, *see* Dkt. No. 12, which United States District Court Judge Karen Gren Scholer has referred to the undersigned United States magistrate judge for hearing, if necessary, and for findings and recommendations, *see* Dkt. No. 13. The undersigned now sua sponte amends the prior FCR and issues the following findings of fact, conclusions of law, and recommendation that the Court grant Plaintiff's Motion for Default Judgment [Dkt. No. 12].

**Background**

This case began on February 7, 2020, when Plaintiff Tamera Shannon filed suit against Defendant Bayside Capital Services, LLC. *See* Dkt. No. 1. Shannon alleges that Bayside, a company that specializes in debt collection, phoned her "on or around January 23, 2020" about a defaulted payday loan that she had obtained from an online lender. *See id.* ¶¶ 13, 17. During the call, Bayside sought payment of the loan and threatened to garnish her wages. *See id.* ¶¶ 18-19. Bayside did not identify

itself as a debt collector, *id.* ¶ 22, or "disclose that '[it was] attempting to collect a debt,'" *id.* ¶ 21. After the phone call, Bayside failed to send her any written verification of the debt it sought during the call. *See id.* ¶¶ 23-24.

Shannon claims that Bayside's actions during and after the phone call violated multiple sections of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and the Texas Debt Collection Act ("TDCA"), TEX. FIN. CODE §§ 392.001 *et seq.*

Shannon served her Complaint on Bayside and returned an executed summons on February 20, 2020. *See* Dkt. No. 9. On April 16, 2020, after Bayside did not respond to the Complaint within the time allowed, Shannon made a request for the Clerk to issue an entry of default. *See* Dkt. No. 10. The Clerk entered default on the same day. *See* Dkt. Nos. 11, 12-1.

Shannon then filed her Motion for Default. *See* Dkt. No. 12. Shannon requests statutory damages under the FDCPA, as well as attorneys' fees and costs. *See* Dkt. No. 12 at 2. In support of her Motion, Shannon submitted an affidavit from her attorney of record, Joseph S. Davidson. *See* Dkt. No. 12-2.

Bayside has not responded to the Motion for Default Judgment, and its time to do so under the Court's local rules has passed.

## Legal Standards

Under Federal Rule of Civil Procedure 55(a), a court may enter default judgment when a defendant fails to answer or otherwise respond to a complaint within the time required by the Federal Rules of Civil Procedure and after the Clerk

makes an entry of default. *New York Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir. 1996). A plaintiff seeking a default judgment must establish: (1) that the defendant has been served with the summons and complaint and that default was entered for its failure to appear; (2) that the defendant is neither a minor nor an incompetent person; (3) that the defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) that, if the defendant has appeared in the action, the defendant was provided with notice of the application for default judgment at least three days prior to the hearing. *See Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12-cv-2092-M, 2013 WL 145502, at *2-*3 (N.D. Tex. Jan. 14, 2013).

The plaintiff must also make a *prima facie* showing there is "jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

Before entering a default, a court should consider any relevant factors. Such factors include "(1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion." *Arch*, 2013 WL 145502, at *3 (citing *Lindsey v. Prive Corp.,* 161 F.3d 886, 893 (5th Cir. 1998)).

The court must also be satisfied that there is a sufficient basis in the pleadings for the judgment requested. *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). For purposes of a default judgment, all supported, well-

pleaded allegations are assumed to be true. *See id.* at 496. But "the defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)). A court "may conduct hearings" if it is necessary to "establish the truth of any allegation by evidence ... or ... investigate any other matter." FED. R. CIV. P. 55(b)(2)(C).

An entry of default "does not establish the amount of damages. After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *United States of Am. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (internal citations omitted). A court may enter default judgment against a party and determine damages without the benefit of an evidentiary hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (internal quotation marks omitted).

In the Fifth Circuit, default judgments are disfavored, owing to its "policy in favor of resolving cases on the merits." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014). That policy is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999).

## Analysis

### I.    The Court should enter a default judgment against Bayside.

Shannon has satisfied the prerequisites for entering a default judgment against Bayside. First, Shannon properly served her summons and complaint on Bayside. *See* Dkt. No. 9. When serving a corporation, a plaintiff may satisfy the service requirement "by delivering a copy of the summons and of the complaint to an … agent authorized by appointment or by law to receive service of process." FED. R. CIV. P. 4(h)(1). Here, the summons identifies CT Corporation System as Bayside's registered agent. *See* Dkt. No. 9 at 1. In the service affidavit, signed by Shannon's process server under penalty of perjury, the process server noted CT Corporation's address as the place service was made and identified Derrick Hackett as the individual that the summons and complaint was served on. *See id.* at 2. The service affidavit states that Derrick Hackett is an individual "who is designated by law to accept service of process on behalf of Bayside." *Id.* As additional evidence that service was proper, Shannon's attorney, Joseph S. Davidson, filed an affidavit in support of the motion that states the "Complaint and summons were served … on Derrick Hackett, who is designated by law to accept service on behalf of Defendant." Dkt. No. 12-2 ¶ 14. Based on this evidence, the undersigned finds that service was completed at the address of Bayside's registered agent, CT Corporation, on Derrick Hackett, who is authorized by law to accept service on behalf of Bayside. Service is therefore proper under Rule 4(h)(1).

Next, Bayside has not filed any responsive pleadings or otherwise appeared in this case. And Bayside is a limited liability corporation and, therefore, cannot be a minor, an incompetent person, or active in military service. *See* FED. R. CIV. P. 55(b)(2); 50 U.S.C. §§ 521(a), (b)(1)(A)-(B).

Shannon has also shown the Court has jurisdiction over this matter. The Court has original jurisdiction of her FDCPA claims under 28 U.S.C. § 1331 and supplemental jurisdiction of her TDCA claims under 28 U.S.C. § 1367. *See* Dkt. No. 1 ¶¶ 2-3.

And the relevant considerations all weigh in favor of entering default. Bayside's failure to respond to Shannon's Complaint or otherwise communicate with the Court threatens to bring the adversary process to a halt, effectively prejudicing Shannon's interests in pursuing her rights afforded by law. *See Lindsey,* 161 F.3d at 893. There is no evidence before the Court that "a good faith mistake or excusable neglect" caused the default, and there are no facts that show there is "good cause" for which the Court would be obligated to set aside the default if later challenged by Bayside. *Id.*

Finally, Shannon's allegations provide a sufficient basis for the judgment requested. In her Motion for Default, Shannon seeks only relief under the FDCPA and does not raise her claims under the TDCA. The Court should therefore consider only her FDCPA claims.

To succeed on a FDCPA claim, a plaintiff must show: "1) the plaintiff has been the object of collection activity arising from consumer debt; 2) the defendant is a 'debt collector' defined by the FDCPA; and 3) the defendant has engaged in an act or

omission prohibited by the FDCPA." *Vick v. NCO Fin. Sys., Inc.*, No. 2:09–cv–114-TJW–CE, 2011 WL 1193027, at *2 (E.D. Tex. Mar. 7, 2011).

Shannon's allegations, taken as true, satisfy the elements required to prevail on her FDCPA claim. First, Shannon was the "object" of Bayside's attempt to collect on the defaulted payday loan, which is a consumer debt as defined under Section 1692a(5). *See* Dkt. No. 1 ¶¶ 13-24; 15 U.S.C. § 1692a(5).

Second, Bayside is a "debt collector" as defined under Section 1692a(6) because the "principle purpose of [Bayside]'s business is the collection of debts." Dkt. No. 1 ¶ 10; 15 U.S.C. § 1692a(6).

Third, Bayside violated Sections 1692e(4), e(11) and g(a) of the FDCPA. Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Specifically, it is a violation to make a "representation … that nonpayment of any debt will result in" garnishment of wages if such action is not allowed by law, *id.* § 1692e(4), "fail to disclose … that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," *id.* § 1692e(11), or fail to send a written notice containing specific disclosures about the debt "[w]ithin five days after the initial communication," *id.* § 1692g(a).

Here, Shannon alleges that Bayside violated these sections when it "threatened [her] with wage garnishment," Dkt. No. 1 ¶ 29, "failed to disclose that [it was] attempting to collect a debt" or that it would use information obtained for that purpose, *id.* ¶ 31, and failed to provide the required validation notice, *id.* ¶ 36. These

allegations contain enough factual detail to state a claim, and the Court is not aware of any applicable defense. *See Helena Chem. Co. v. Goodman.*, No. 5:10-cv-121, 2011 WL 1532200, at *1 (S.D. Miss. Apr. 21, 2011) (noting that the district court, in deciding whether to grant a motion for a default judgment, should consider whether the defendant has a meritorious defense to the complaint).

Accordingly, the entry of a default judgment against Bayside is appropriate.

## II.    The Court should award Shannon damages, attorneys' fees, and costs.

### A.    Damages

The allegations in Shannon's Complaint, taken as true, entitle her to statutory damages under 15 U.S.C. § 1692k(a)(2)(A). Under Section 1692k(a)(2)(A), "any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to that person in an amount equal to the sum of ... such additional damages as the court may allow, but not exceeding $1000." 15 U.S.C. § 1692k(a)(2)(A). When determining whether such damages are warranted, the court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." *Id.* § 1692k(b)(1).

Ordinarily, damages will not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir. 1979). But, when the amount of damages can be determined by mathematical calculation, and when a hearing would not be beneficial to the court, a hearing is unnecessary. *See Leedo Cabinetry,* 157 F.3d at

414. A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993) (internal citations omitted).

As outlined above, Shannon has adequately pled Bayside is liable for its violations of the FDCPA. After considering the Section 1692k(b)(1) factors, the undersigned concludes that $1,000.00 in damages is appropriate. Bayside's liability is clear on the face of the Complaint, and the frequency, nature, and extent of the violation weighs in favor of awarding Shannon the requested $1,000.00 in damages. Because Shannon's damages are capable of mathematical calculation, a hearing to determine the amount of damages would not benefit the Court and is not necessary.

## B.    Attorneys' Fees and Costs

Shannon has also shown that she is entitled to attorneys' fees and costs. Under the FDCPA, successful plaintiffs are entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). As a result of Bayside's default, Shannon is a successful plaintiff entitled to both attorneys' fees and costs.

### i.    Attorneys' Fees

The attorneys' fees that Shannon requests are reasonable and should be awarded. "This Court uses the 'lodestar' method to calculate attorney's fees." *Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999); *see also Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 F. App'x 146, 157 (5th Cir. 2015) (applying lodestar method to claims under the FDCPA). The lodestar is calculated by

multiplying the number of hours that an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). The parties seeking reimbursement of attorneys' fees bear the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See id.* The hours remaining are those reasonably expended.

There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). "However, after calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on the relative weights of the twelve factors set forth in [*Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)]." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins*, 7 F.3d at 457.

Shannon seeks $3,112.5 in attorneys' fees for a total of 8.1 hours of work performed by attorney Joseph S. Davidson and paralegal Michelle Barry. *See* Dkt. No. 12 at 5; Dkt. No. 12-2 Ex. 1. The hours expended are supported by the billing entries for this matter attached to Mr. Davidson's Affidavit, and the entries include narratives of the work performed. *See* Dkt. No. 12-2 Ex. 1. The requested hourly billing rate for Mr. Davidson is $425, and for Ms. Barry, $125. *See* Dkt. No. 12-2 at 3.

-10-

Considering Mr. Davidson's experience and the local market rates, the undersigned finds Mr. Davidson's requested hourly rate of $425.00 is reasonable. Mr. Davidson states in his affidavit that he has been in practice since 2010 and has substantial experience representing consumers. *See* Dkt. No. 12-2 at 2. Mr. Davidson states further that he has represented over 1,000 consumers in claims brought under consumer protection statutes, including the FDCPA, and that he has obtained positive results in almost all those cases. *See id.* And the rates charged by Mr. Davidson are consistent with Dallas area market rates for attorneys with similar experience, skill, and ability handling this type of litigation. *See generally Vanliner Ins. Co. v. DerMargosian*, No. 3:12-cv-5074-D, 2014 WL 1632181, at *2 (N.D. Tex. Apr. 24, 2014) (noting that the Court is an expert on the reasonableness of attorneys' fees).

Although neither Shannon nor Mr. Davidson address the training or experience of Ms. Barry, the requested hourly rate of $125 for her work as a paralegal is also reasonable. Courts in the Northern District of Texas have awarded similar rates for paralegals, and the Court determines Ms. Barry's $125 requested hourly rate to be reasonable and consistent with Dallas area market rates. *See, e.g.*, *Rolex Watch U.S.A., Inc. v. Mills*, No. 3:12-cv-61-L, 2012 WL 5903782, at *5-*6 (N.D. Tex. Nov. 26, 2012) (awarding fees of $125 per hour for a paralegal); *EsNtion Records, Inc. v. Triton TM, Inc.*, No. 3:07-cv-2027-L, 2010 WL 3446910, at *3 (N.D. Tex. Aug. 31, 2010) (accepting $125 per hour rate for paralegal without further discussion where parties did not dispute rate).

Based on the motion and the supporting documents, the undersigned finds the appropriate lodestar here to be calculated as 7.0 hours for Mr. Davidson at $425.00 an hour ($2,975.00) and 1.1 hours for Ms. Barry at $125.00 an hour ($137.50), for a total of $3,112.50. Shannon does not seek an enhancement of the attorneys' fees, and there are no other exceptional circumstances. The undersigned has considered the *Johnson* factors and finds that none of them weigh in favor of modifying the lodestar.

### ii.    Costs

Regarding costs, Shannon can recover costs for filing fees but not process server fees. Shannon seeks a total of $472.75 in costs: $400.00 for the filing fee and $72.75 for service of process fees. But recoverable costs are limited to the categories listed in 28 U.S.C. § 1920. *See Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010). Judges on this court have previously found that "Section 1920 does not permit recovery of costs for process serving." *Gomez v. Managing Innovation & Tech., Inc.*, No. 3:14-cv-936-M, 2015 WL 6150905, at *2 (N.D. Tex. Oct. 15, 2015). Thus, "absent exceptional circumstances, the costs of a private process server are not recoverable" under Section 1920. *Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010). Accordingly, the Court should award Shannon only $400.00 in costs for filing fees.

### Recommendation

The undersigned recommends that the Court grant Shannon's Motion for Default Judgment [Dkt. No. 12] and enter a default judgment on the FDCPA claims against Bayside. The Court should order that Shannon is entitled to $1,000.00 in

statutory damages, $3,112.50 in attorneys' fees, and $400.00 in costs, for a total judgment of $4,512.50.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED.

DATED: November 24, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE